[See Case No. 5,192.]

## Case No. 5,198.

GALLAHUE et al. v. BUTTERFIELD.

[10 Blatchf. 232; 6 Fish. Pat. Cas. 203; 2 O. G. 645; Merw. Pat. Inv. 340.][1]

Circuit Court, S. D. New York. Dec. 6, 1872.

[1] [Reported by Hon. Samuel Blatchford, District Judge. and by Samuel S. Fisher, Esq., and here compiled and reprinted by permission. The syllabus and opinion are from 10 Blatchf. 232, and the statement is from 6 Fish. Pat. Cas. 203; Merw. Pat. Inv. 340, contains only a partial report.]

C. M. Keller, for complainants.
G. L. Roberts, for defendant.

WOODRUFF. Circuit Judge. The bill of complaint herein is filed to restrain the alleged infringement of certain letters patent for machines for pegging shoes. A patent was granted to the complainant Gallahue, on the 16th of August, 1853, which was extended for seven years, on the 18th of February, 1867, and was afterwards surrendered and reissued under date of July 6th, 1869. Another patent was granted to the said complainant on the 29th of March, 1859, for another improvement. which was afterwards surrendered and reissued under date of June 22d, 1869. A third patent was granted to the said complainant on the 26th of August, 1862, for another improvement or improved machine. The other complainant claims as assignee of three-quarters of the right, title, and interest of the patentee in or to these letters patent. The bill alleges an infringement by the defendant of these several patents. and prays an injunction and an account of profits. &c. The answer does not deny the granting of the letters patent, or the extension and reissues alleged in the bill, but denies that Gallahue was the first inventor of the alleged inventions, denies that they were either new or useful, denies that they were granted "according to law," alleges that the inventions were never reduced to practice, denies that the complainants have any exclusive rights under the patents, and denies that the defendant has infringed, alleging that the machines which he has been. and is now, selling are constructed under various other patents, which are specified, and which were granted at various dates, from January 17th, 1854, to October 11th, 1864. The answer also alleges, that the inventions claimed by the complainants were described, before the date of Gallahue's invention, in a very great number of letters patent mentioned in the answer, and were known to a great number of persons, also named therein;

and, finally, the answer alleges abandonment of these inventions, by the patentee, to the public.

The time which I have devoted to the examination and consideration of the voluminous testimony and documents put in evidence, and to the elaborate arguments of the counsel in an anxious endeavor to reach a just conclusion, and the numerous cases which are now before me awaiting examination and decision, both forbid that I should detain the parties longer in this court, for the purpose of doing more than state the conclusions to which I am brought; and the statement of those conclusions in brief must not suggest any failure to consider the points urged upon my attention, though not here separately discussed.

(1.) First, I do not consider the objections urged to the validity of the reissues set up in the bill of complaint, tenable. On the contrary, the improvements described in the reissues were included in, and shown by, the original record; and I find also that the invention was complete, and was reduced to practical use and adaptation to the pegging of boots and shoes.

(2.) Except so far as hereafter indicated, I find that the patentee, Gallahue, was not anticipated, in his invention, in any particular material to the decision which is below stated, and that the proof establishes that he was the first inventor of the devices secured by his patents, so far as such patents are found by me to be infringed by the defendant.

(3.) I find it unnecessary to enter into a detailed examination of the machine made by Amos Whittemore, of which parts were produced in evidence, to ascertain whether, or to what extent, it included a device or devices like those invented by Gallahue, because the proofs show, in my judgment, that nothing in its history is any impediment to the force, effect, and validity of the patent of the latter. It was an abandoned experiment, within the rule on that subject, not brought into effective operation, cast aside and taken apart, and, without any intention to reconstruct it, portions of its machinery were appropriated to other uses, and the remaining parts were wholly useless, as a machine, for any purpose within the purview of the invention of Gallahue.

(4.) The foregoing conclusions lead to the consideration of the specific claims in the complainants' patents. and to the question of infringement.

1st. The first claim in the reissue of July 6th, 1869, No. 3,533, is as follows: "The use, in a pegging machine, of a gauge arranged in relation to the part that supports the boot or shoe, to form a bearing for the edge of the sole, and thus insure the insertion of the pegs at a uniform distance from the edge of the sole, without the use of patterns, substantially as described."

If this claim should be construed to include any and every gauge which may be used, in

a pegging machine, as a guide to which the edge of the shoe may be applied, to regulate the distance, from such edge, at which the pegs shall be inserted, then it is clear it could not be sustained. A gauge for that purpose had before been used, in the hand machine patented to John C. Briggs, October 9th, 1845, and a gauge performing a like office is also found in the machine made by Leander Lackey, which was invented earlier than that of Gallahue. Indeed, the counsel for the complainants, in substance, concedes, that, if such be the construction of the claim, it must be deemed invalid, for the reason stated.

But, it is insisted, that, when read in connection with the whole specification, this claim may and should be construed as meaning the use of an adjustable gauge, in connection with the automatic movable support of the boot or shoe, while subjected to the operation of the automatic movement of the awl and driver described in the specification. The fact, that, in the Lackey machine, the gauge operated on the edge of the shoe, to guide it, while it was held to receive the awl and driver, acting automatically, to insert the peg, necessarily reduces even this construction of the claim to some extent, and requires that it be held to apply to those cases in which the specific kind of gauge described by Gallahue in this patent is used, or in which substantially the same movable support is given to the boot or shoe in the process, or, at least, in which substantially the same pegging machinery is used, for the insertion of the peg. The specific gauge used by the defendant has more resemblance to the Lackey gauge than to Gallahue's, and the support of the shoe employed by the defendant is a different mechanical structure from the movable table described in this first patent of Gallahue; and, though it may bring the machine within the range of Gallahue's exclusive right under his subsequent patent, it cannot be deemed an infringement of the claim under consideration, if such movable table be included in that claim.

There remains, therefore, only the suggestion, that this claim embraces an adjustable gauge when used in connection with a movable support to the boot or shoe, and in connection with the pegging apparatus, that is, an awl-carrier and driver operated by a cam and spring or springs. In this aspect of the claim, it may properly be considered in connection with the other claims which more specifically relate thereto.

2nd. The next claim of this reissue, alleged to be infringed, is the third: "The combination of the awl-carrier and peg-driver, each separately lifted by a cam, and driven down by a spring. substantially as described." This I find to have been a new device, and, if the machines sold by the defendant are, in substance. the same, in this respect, as that of Gallahue, then of this claim the defendant is an infringer.

In the machine of Gallahue, as described in his original patent, there was, besides the springs, a weight co-operating therewith, to give greater efficiency to the blow; but the spring was there, also, acting, and the awl-carrier and peg-driver were raised by a cam. In the defendant's machine, the awl-carrier and peg-driver are raised by a cam; but the downward blow is given by the spring, without any additional weight. Hereupon, the questions arise, whether, when an inventor employed both spring and weight, in his machine, as originally constructed, he is at liberty to claim, in his reissue, the use of the spring alone, as included in his invention, and whether another person may use the spring alone without liability as an infringer. My conclusion, in this case, is, that the defendant was not at liberty to use the spring, and, by increasing its power, render it practically equivalent to both spring and weight, as originally described. How far such a change, with a corresponding change in the details of the arrangement, may be an improvement, to which the defendant, or those whom he represents, have title, may depend upon the patentee's right to claim the spring separately, in his reissue; but, in my judgment, even if an improvement, it is an infringement. It is an appropriation of a substantial part of the actual invention shown in the original record. Nor do I perceive any sound objection to allowing the inventor, in his reissue, to claim the action of the spring alone. It is shown in the record of his patent; and, surely, a patentee, whose devices are new, is at liberty to claim each, by way of reissue, although he may have represented and claimed them originally as acting conjointly. In respect to this claim, therefore, I deem the machines sold by the defendant an infringement.

3d. The next claim in this reissue, of which infringement is averred, is: "The combination, in a pegging machine, of a gauge for the edge of the sole to rest against, and an awl-carrier driven by a spring, substantially as herein described."

It was not claimed, by the complainants' counsel, on the hearing, that, if this claim be regarded simply as a claim to "combination," as such, it was valid; and for this reason—a gauge operated in the same manner, and produced the same effect, by whatever means the awl-carrier was driven, and the awl-carrier driven by a spring operated in the same manner, and produced the same effect, by whatever means the boot or shoe was brought to the proper position for receiving the peg. In such case, (mere "combination" being the subject of the patent), the doctrine proceeds upon the ground, that the parts are old, and that nothing new results from their contiguous or contemporaneous action. which is due thereto. But, where one or more of the parts are new, and the combination is, for that reason. made to produce a new result, in the greater rapidity

and economy with which the shoe can be pegged, as, where the use of the new device of driving the awl-carrier by the spring made to operate automatically, or, in the terms of the claim, "substantially as described," cannot be usefully employed without the gauge, then there is something more than mere aggregation, in the sense above stated. Then there is a new result, due to the employment of the awl-carrier, driven by a spring, and operating automatically, in connection with a gauge, without which it could not be operated to produce the advantageous results contemplated and, in fact, attained, by the use of both. All machines are, in a certain sense, combinations; but it is not true of machines, as 'such, that, because every one of its members performs in it the identical office which it would perform howsoever used, the conjoint action in their new combination may not produce a result new and useful, and never before attained. In this view, I deem this claim valid, and hold it infringed by the defendant.

4th. The next claim is: "Making the gauge, (a,) against which the edge of the sole bears, adjustable, for the purpose of enabling the shoe to be so adjusted as to have two or more rows of pegs inserted therein."

The Briggs hand machine had, as already stated, an adjustable gauge; but, it was only adapted to one change. This enabled the workman to insert two rows of pegs only; and it was not adjusted in the same manner as was that of Gallahue. The former was attached to the machine by a screw, which, being loosened, permitted it to be turned, so as to present to the edge of the shoe, first, its longer, and then, its shorter, end. The gauge of Gallahue was attached by a screw, which, being loosened, permitted the gauge, (in which was a slot, through which the screw was inserted,) to be drawn forward, or pushed back, so as to regulate the insertion of pegs at any desired distance, nearer or more remote, from the edge of the sole. But, this construction of a gauge was not novel, and the circumstance that it was here applied to a pegging machine, and guided the shoe, so that any number of rows of pegs could be inserted, does not make it patentable, except when used with other devices, so as to constitute either a new machine or a new and patentable combination. In such machine or combination, it may be a part of the complainants' invention, but, the making of the gauge adjustable not being new, the mere application of it to a new use is not separately and independently patentable. Others of the claims of the patent may embrace all to which the patentee is entitled in respect to the use of the gauge, but, the claim to the mere making of the gauge adjustable, as expressed in this claim, I think, cannot be separately sustained.

5th. The remaining claim in this reissue is: "The combination in a pegging machine of a gauge for the edge of the sole to bear against and a rotating last-holder or support, substantially as described."

I cannot find that this claim is infringed by the defendant, unless I should hold that it embraces every combination in which a gauge is used, with the edge of the sole to bear against, with a rotating last-holder. If I were so to hold, then I must find, from the evidence, that Lackey anticipated the complainants; and, if I hold that the claim is limited to the special device by which Gallahue effected the rotation, then I must find, from the evidence, that the defendant does not infringe. In either case, the complainants cannot prevail, in this case, upon this claim.

6th. The only infringement of the reissue of June 22d, 1869, relates to the second claim therein. The complainants insist that the last-holder connected with the machines sold by the defendant, though widely different in form, does, by the use of merely mechanical equivalents, embrace, in principle and mode of operation, the substance of this second claim of Gallahue to his last-holder. That claim is: "Pivoting the plate or frame, (g,) that supports the last, at or near its centre, and so arranging it, that it may turn on said pivot, during the operation of pegging, thereby so adjusting the boot or shoe as to present the various portions of the sole in the requisite position to the awl and peg, as the sole moves along, substantially as described."

The specific details of the arrangement by which this result is automatically produced, are, some of them, the subject of other claims in this patent, but it is not claimed that these details are copied in the defendant's machines. It is claimed, that supporting the last on a plate or frame pivoted at or near its centre, so as to allow an oscillating or vibratory motion of the last, and to present the uneven and curved surface of the sole in proper position to the awl, at the very place of its descent, so that it shall pass in the proper direction into the leather, was new and a patentable device, and that, in this particular, though without copying the supplemental means of moving the last forward and backward, by which such moving was automatically effected, the defendant has infringed the patent. It will be perceived, that the pivoting here claimed is entirely irrespective of the question, by what means, whether mechanical, or by the hand of the workman, the shoe resting on the holder is brought or held under the awl and peg-driver, and alike independent of the means by which it is moved along, so as to be pegged, from heel to toe, or from toe to heel, and it has no necessary connection with the instrumentality by which the shoe is to be rotated, so as to be pegged on both sides, and around heel and toe. All these are necessary to the full performance of the pegging, but they are not embraced in this claim. It is the raising and depressing of

heel and toe alternately, and the oscillation side-wise, so that the surface, at the point where the peg is to be inserted, may receive the awl and peg in the right direction, which this claim contemplates. Gallahue's device consists in placing his last-holder on pivots passing through an arm on each side, so that either end, by the oscillation of the holder on the pivot, raises or depresses either end of the last, as it is moved forward or backward. The sidewise vibratory motion is effected in like manner, by pivoting the bed of the last-holder at each end, so that it may be turned towards or from the awl, and so change the plane of the surface of the shoe lying thereon. In short, by this combination of pivots, something resembling a universal joint is produced, or, perhaps, more exactly, an arrangement like the usual mode of suspending a mariner's compass. Such an arrangement, applied to a pegging machine, was new in its operation and effect, in the art of pegging shoes, and its utility cannot be deemed doubtful, upon the proofs herein. The last-holder used in the machines sold by the defendant has the same operation, and in substantially the same mode. It is true, that some of the proofs would, at first view, indicate that the latter is not the equivalent of the complainants' device, but such evidence includes in its scope more than the claim now under consideration, as above explained. As it respects the applying of the shoe to the gauge, and holding it in contact, the hand and power of the workman is required. As it respects the moving of the shoe forward, and turning it around the heel and toe, the serrated instrument or feed, co-operating with the power of the workman applied to the last-holder, are necessary. But, as already remarked, these are not the features which are the subject of this claim. The vibratory and oscillating motion of the last, by the means of what is, in substance, a universal joint, is what this claim contemplates and provides for.

It is urged, that, by the defendant's machine, operated, in this respect, partly by hand, the operation is more perfectly performed, that is, the surface of the shoe, at the point of the insertion of the peg, is more exactly at right angles to the line of the motion of the awl. That may, perhaps, be true, but that is due to the guiding power of the workman, employed instead of the automatic motion produced in the complainants' machine, and it is not those which are embraced in this claim. No prior machine had the capacity here in question. The Lackey machine moved the shoe in the arc of a circle, but had not two combined motions, producing the result referred to. Several last-holders, called "jacks," had been contrived, but none had this important feature, as I think the evidence fully establishes. This claim must, therefore, be held infringed by the defendant.

7th. The other and remaining claim of which the complainants insist that infringement is shown, is in the patent dated August 26th, 1862. That claim is: "Cutting off the pegs laterally from a strip of peg wood by the movable knife, (e,) being brought against the surface of v, figure 3, as set forth."

It is clear, I think, upon the evidence, that this was an original invention by Gallahue. Laying out of view, for reasons already stated, the machine of Whittemore, no evidence is produced of any prior device like that of Gallahue. All previous devices for cutting the strips of peg wood into pegs operated upon the edge of the strip, so as to split it, and, the grain of the wood being irregular, the split would follow the grain of the wood, and the pegs were of uneven and irregular form. By Gallahue's device, the knife, actuated by a lever, was made to bear upon, and penetrate, the strip of peg wood sidewise, and divide it into pegs of even, regular, and uniform size and form. By the like device in the machine sold by the defendant, operating substantially in the same manner, the pegs are cut evenly and regularly, without being affected by irregularity or obliquity in the grain of the wood. If there were any doubt in regard to other particulars, the infringement by the defendant in this seems to me clear.

I have not overlooked or failed to consider the objections urged to these conclusions, in the very able argument of the defendant's counsel. The failure to notice them herein in detail is not due to a want of appreciation of the industry and ability displayed in their presentation. Having reached the conviction expressed in the foregoing, I have no alternative but to say, that the complainants are entitled to a decree in conformity therewith.