## Case No. 2,317.

### CALKINS v. BERTRAND et al.

[6 Biss. 494; 2 Ban. & A. 215; 9 O. G. 795; 8 Chi. Leg. News, 114; Merw. Pat. Inv. 216.] [1]

Circuit Court, N. D. Illinois. Dec. Term, 1875.

PATENTS—CULTIVATORS—RE-ISSUE—EXTENDING CLAIM—CERTAINTY IN CLAIM.

1. Under the patent laws from 1836 to 1861 [5 Stat. 122; 12 Stat. 246], a patentee can claim in a re-issue whatever clearly appears to have been a part of his original invention as then shown or described, either by his drawings, specifications or models.

[Cited in Holmes Burglar Alarm Tel. Co. v. Domestic, etc., Tel. Co., 42 Fed. 224.]

2. The locating the joint forward of the evener in a cultivator beam, is a patentable feature, as it produces new and useful results.

3. Julius Gerber's re-issue of April 26, 1870, for "improvement in cultivators," original patent granted April 24, 1860, construed and held valid.

4. Certainty in claim for patent need only be such as will enable a person of skill who understands the result to be attained, to construct a machine embodying the principle.

[In equity. Bill by Martin T. Calkins against Theophilus F. Bertraud.]

S. A. Goodwin and G. W. Ford, for complainant.

West & Bond, for defendants.

BLODGETT, District Judge. This is a bill in equity for gains, profits and damages, and final injunction against the defendants for an alleged infringement of a re-issued patent [No. 3,932] "for an improvement in cultivators," granted to Julius Gerber, April 26, 1870, upon the original patent [No. 28,016] issued to Irulus R. Smith, dated April 24, 1860.

The answer denies that Smith was the first inventor of the improvement described and claimed in the original Smith patent, and as re-issued, and also insists that the re-issued patent is not for the same invention as that described in the original patent. The defendants also deny that they infringed the plaintiff's patent, even if its validty is conceded or established. The drawings attached to the original Smith patent showed a cultivator frame mounted on wheels and fastened to the tongue at a point forward of the evener. This frame worked freely above the axle, the axle gauging the depth which the shovels could run into the ground. The claim was for the combination of this frame as constructed, with the wheels and tongue by the joint "M," as shown and specified. In the re-issue to the complainant Gerber, he was allowed to amend his specifications in several particulars, the most material of which is, that "the auxiliary frame is hinged or otherwise loosely attached to the main frame

at a point between the evener and the neck-yoke, by means of which great length of beam is obtained, and more purchase in the side motion. * * * By means of the long swing obtained by bringing the beam of the auxiliary frame forward of the evener, the difference between the movements of the front and rear shovels is rendered relatively less."

His general claim in 1860, was for the idea of mounting this cultivator frame upon wheels, so that the operator could ride upon the wagon frame without his weight resting upon the cultivator frame, and operate the cultivator frame from his seat or platform. The patent was for the combination of the cultivator frame and the wagon frame together, connecting them by the joint "M." He did not seem to realize that there was any very special merit in bringing the beam forward to the point where he coupled it to the tongue; at least he makes no mention of it in his specification, as a novel or useful element in his machine. It was, however, found by experience that this cultivator, by reason of the long swing which it had in its beam, was much more readily manipulated and handled than any other which had been produced, and therefore the cultivator seems to have come into somewhat general use, and finally the owners of the patent surrendered it, and obtained a re-issue covering, as a specific device, this idea of coupling the beam forward of the evener so as to secure a long swing as the essential element in the invention.

The claim of the re-issued patent is as follows: "First, an auxiliary frame carrying two or more shovel standards on each side, as shown, when said frame is hinged to the pole between the evener and neck-yoke, as described, for the purposes set forth." There is no doubt but that Smith's original model shows that he hinged his plow-beam forward of the evener. The joint is shown in the original model, and it is also shown in the drawings. And Gerber, therefore, had the right, as the assignee of Smith's patent, to cover that feature of the Smith invention by the re-issued letters-patent. And it seems, too, that the patent office took the same view of the matter, and gave him what he claimed. This re-issue was made on the 26th of April, 1870, and while the patent office was acting under the law of 1836 [5 Stat. 122], as amended up to the act of 1861 [12 Stat. 246], so far as related to the matter of re-issues. This law has been construed to authorize a patentee to claim on a re-issue whatever shall clearly appear to have been a part of his original invention as described or shown in his original specifications, drawings or models. There are ample authorities upon that point construing the act of 1836, with amendments up to 1861 in that regard, and giving the inventor the right to a re-issue where the new claim is clearly justified by his drawings or specifications or models,

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission. Merw. Pat. Inv. 216, contains only a partial report.]

or either, and allowing him to amend his specifications if necessary, so as to cover more fully what, upon experience, has proven to be a meritorious part of his invention. Battin v. Taggert, 17 How. [58 U. S.] 74; Gallahue v. Butterfield [Case No. 5,198]; Wheeler v. Clipper Mower, etc., Co. [Id. 17,-493]; Seymour v. Osborne, 11 Wall. [78 U. S.] 544.

It seems clear from the proofs in this case that as wheel cultivators came into use, the value of the long swing to the beams, in the practical working of the machine, became more apparent, and hence the owners of the Smith patent sought and obtained this re-issue for the purpose of covering this special feature in the original Smith machine. The defendants contend that the re-issued patent is void because the distinguishing feature, the location of the joint forward of the even-er, is not patentable. They urge that hinging forward of the evener instead of back of it, produces no new result; that no definite point is fixed and no directions given as to the point where the joint is to be placed. The evidence, however, seems to me to show that the "long swing," obtained by the hinging of the beam forward of the evener, is a new and useful result. The machines of Ganse and Whitehall, shown in the proofs, which ante-date the Smith patent, show the shovel-beams hinged back of the evener, producing a jerky motion and rendering it almost, if not wholly, impossible to guide the shovels so as to avoid hills out of line, or stones, roots or other obstacles in the direct line.

The suggestion that this is not a change of result, but is only a change in degree, is, I think, not sustained by the proof. The long radius, in other words, secures a practicable cultivator which can be guided along the side of a crooked row of plants so as to avoid disturbing them, while the short beams would seem to be practically useless except in straight, or nearly straight, rows. This is a practically new result and the proper subject of a patent as such. The objection that the first claim of the patent is void for uncertainty, because the precise location of the joint is not described or fixed in feet or inches, seems to me untenable. The amended specifications say:

"This auxiliary frame is hinged, or otherwise loosely attached to the main frame at a point between the evener and neck-yoke, by means of which great length of beam is obtained and more purchase in the side motion.

\* \* \* \* \* \* \* \*

"When two shovels are employed upon each side of the auxiliary frame, the rear set are necessarily wider apart than the front set, and as they swing in the arc of a larger circle, they move relatively over more ground.

"In the ordinary cultivator, this difference of relative movement is quite marked, and consequently there is danger, when the front shovels are swung aside to avoid irregularly planted hills, of the rear shovels interfering with the wheels or the adjacent rows.

"By means, however, of the long swing obtained by bringing the beam of the auxiliary frame forward of the evener, the difference between the movements of the front and rear shovels is rendered relatively less, and the difficulty referred to obviated.

\* \* \* \* \* \* \* \*

"The easy but limited side motion of the auxiliary frame enables the driver to so control its action as to cultivate with safety those crops which have been irregularly planted, or which may have come up in other than straight lines."

Here the direction is to make the swing long enough to secure the desired result, and enables a person of skill who understands the result to be attained, to construct a machine embodying the principle, and this is all the certainty required by law. So that when you consider these specifications, together with the idea that the end to be obtained is the "long swing," it seems to me there is sufficient in the specifications to notify a party who attempts to construct a cultivator as to the length of beam to be adopted. It does not say that the joint "M" shall be three feet six inches or five feet six inches forward of the evener, or that it shall be eight feet back of the point where the neck-yoke connects, but it says it shall be far enough forward to secure that easy motion [that facility of handling],[2] and that long radius which will secure ease of handling, and not bring the rear shovels in contact with the wheels, while it will move the forward shovels far enough to avoid the hills out of line, or any inequality in the surface of the ground, such as a root or a stone, or a stump.

The next point made by the defendants is, that the complainant's machine is constructed upon a different principle than that of a swinging machine; that it is intended to act by a rocking and not by a swinging motion. There seems no doubt that the original Smith machine was intended to rock upon the saddle "P," but provision was also made for swinging, that is, there is play enough between the ploughs and the frame "O" to allow of a swing or side motion. Now, I think there is no doubt, from the proof, that Mr. Smith, in his original patent, intended to not only swing his cultivator frame, but that he also intended to avoid small obstructions by rocking the plough beam upon this pivoted point, this saddle; and any one at all familiar with ploughing knows that a plough is very readily guided by rocking, that is, by tipping the top a little to the right or left. Now, the least tipping of a plough, we all know, causes the plough to run, as the ploughmen say, "to" or "from the land," and the tipping or the rocking of this frame, so that one set of

---

[2] [From 2 Ban. & A. 615.]

shovels shall run deeper into the ground than the other, would of course, cause the frame itself to swing to the side, because it would increase the draft on one side and relieve it on the other. So that the rocking motion of itself would cause the swinging motion. The moment that you rock the shovel enough to secure inequality in the hold upon the ground upon one side more than the other, you would of course produce a swinging motion if your plough was moving forward in straight lines, and undoubtedly this was one of the ideas in the mind of this inventor. While the rocking motion is provided for in the original patent, nothing is said about it in the re-issued patent, and I can see no reason why the complainant is not at liberty to hang or suspend his auxiliary frame under the axle as well as to mount it on or over the axle. This point is not raised in the case, and I do not intend to decide it. Certainly the complainant leaves himself at liberty to rock or swing his shovels, or to do both, as shall be deemed best in practice, by means of the joint "M" between the evener and the neck-yoke.

Now upon the question of infringement: I do not see that there can be any doubt that if Smith was the first to invent the "long swing," to be secured by jointing the beam to the pole between the evener and the neck-yoke, and is entitled to a patent for the idea, then the defendant's machine infringes the complainant's in this particular. I have here a model of the defendant's machine which has the plough beam jointed to the pole between the evener and neck-yoke and suspended under the axle, and operated by means of handles, the driver being seated upon a seat which is but an extension of the tongue or pole to the rear of the axle. Here we have provision for the long swing by the joint between the evener and the neck-yoke, and the essential element of the complainant's device is manifestly in defendant's machine. Both machines are limited in their side motion by the wheels, and the wheels must necessarily be so near together as to run freely between two rows, straddling one.

I therefore come to the conclusion that the re-issue by which Gerber, as the assignee of the Smith patent, was allowed to amend his specifications so as to secure the joint "M" as an element in his device or in the Smith device, and to cover the idea of jointing between the evener and the neck-yoke as a specific element in his invention, is a valid re-issue under the patent law as it then stood; and that having obtained the re-issue and covering now the ground occupied by the defendants, the complainant is entitled to recover. It will be necessary to make a reference in this case, unless counsel agree upon the matter of damages. Decree for complainant.

[NOTE. For another case involving this patent, see Calkins v. Bertrand, 8 Fed. 755.]