## SHAVER v. SKINNER MANUF'G CO.

*(Circuit Court, N. D. Iowa, C. D.   January Term, 1887.)*

1. PATENTS FOR INVENTIONS—NOVELTY—COMBINATION OF OLD APPLIANCES.

    The facts that a patent for a device, consisting of a combination of appliances previously used separately, was granted after the device had been subjected to rigid scrutiny and comparison with previous patents by the patent-office examiners, and that the combination, although useful, did not appear to have been used or proposed before, *held* sufficient to sustain the patent, as against a defense of want of novelty.

2. SAME—CO-OPERATION OF ELEMENTS.

    A transverse spring, included in a patented device designed to reduce the strain upon the side springs, reach, and head-block in wagons, *held* to aid in producing the general result aimed at, contrary to the claim made by the defendants in a suit for infringement, and the patent therefore not to be invalidated by its being included.

3. SAME—INFRINGEMENT—SIMILAR DEVICE.

    The use of a device doing the same work, in substantially the same way, and accomplishing substantially the same result as another patented device, is an infringement of the patent.

4. SAME—IMPROVEMENT.

    An improvement including a patented device or combination infringes the patent.

5. SAME—IMPROVEMENT IN WAGON GEAR—UTILIZING DEVICE FOR ADDITIONAL PURPOSE.

    A patent upon a device for an improvement in wagon gear, designed to render the wagon gear elastic, and to relieve the strain upon the side springs, reach, and head-block, is infringed by using a device substantially the same, although the latter is utilized also to aid the wagon to track.

6. SAME—SPECIFICATIONS—DISCLAIMER.

    It being expressly stated in the specifications attached to a patent that the claimant makes no claim to a certain combination patented by another, *held*, that the patent conferred no right to the use of such combination.

In Equity.   Bill to restrain infringement of patent, and for an accounting.

*Cummins & Wright*, for complainant.

*E. B. Soper, Graham & Cady, G. W. Dyer*, and *R. S. Iles*, for defendants.

SHIRAS, J.   In the bill filed in this cause, complainant avers that on the twenty-third day of August, 1881, letters patent were duly issued to him for an improvement in wagon gear, the object of which is stated to be to provide a device whereby the usual strain upon the side springs, reach, and head-block is avoided, and the wagon gear is rendered more elastic; the claim being stated in the following terms:

"In a wagon gear, the combination, with the wagon-box, A, transverse spring, K, and side springs, M, of the rocking rod or equalizer, N, provided with a forked end, *n*, and bolts, *h*, substantially as herein shown and described, whereby the wagon gear is made more elastic, as set forth."

The bill also avers that the defendant company is engaged in the manufacture and sale of wagons, in the construction of which complainant's patented combination is used, whereby his rights as patentee are in-

fringed; and he prays an injunction, and for an accounting and damages.

In the answer it is averred that the patent issued to complainant is void for want of novelty, in that the patented combination is in fact merely an aggregation of previously known appliances, the combination of which did not require the exercise of inventive skill; that the transverse spring, K, does not co-act with the other parts of the combination in producing the result aimed at; and, the patent being for a combination, the fact that it embraces an element which does not aid in the result defeats the patent; and, finally, that the wagons manufactured by defendant do not infringe upon the patent of complainant, being manufactured under a patent issued to George F. Thompson and Andrew Wilson, bearing date June 17, 1884.

From the statements made in the claim filed by complainant in the patent-office, it appears that there are four main parts in the combination for which complainant obtained his patent, to-wit, the wagon-box, the side springs, the transverse half-elliptic spring, and the equalizing rod, with its attachments, running under the bed of the wagon. It is not claimed that Shaver is the inventor of any one of these several parts. The evidence shows that, at the date of his application for a patent, each one of these devices was well known, and appears in one form or another in various patents previously granted. It does not appear, however, that they had been combined in the manner proposed by complainant, and applied in the construction of spring wagons or buggies in which the front end of the wagon-box or body rests upon an elliptical spring placed upon the front axle, and the hind end upon a platform spring attached to the rear axle. The object of the equalizing rod, which is connected with the ends of the side springs, is to communicate the motion caused in the one spring by the wheel on one side striking an obstruction, or passing into a rut or depression, to the corresponding spring on the other side, and, by the similarity of motion in the springs thus produced, to equalize the effect on the wagon body and gear. The equalizing rod passes through two journal boxes firmly attached to the wagon-box, and at each end is bent at right angles, the arms thus formed being attached to the forward ends of the side springs; and by this means the lengthening and shortening of the side springs, when pressure is applied thereto or removed therefrom, is provided for.

On behalf of defendants it is claimed that, as each one of the elements entering into this combination was known and in use at the date of complainant's application for a patent, it did not require the exercise of inventive skill to place the same in combination, and therefore the patent is void for want of novelty. If the question was before me as an original one, with the burden upon complainant of establishing by satisfactory evidence the patentable character of the combination, unaided by the presumption arising from the issuance of the letters patent, I should entertain grave doubts as to the conclusion to be reached. As the issue is, however, now presented, the complainant has the benefit of the presumption in his favor arising from the issuance of the letters patent,

which *prima facie* establish the novelty of the invention therein described. *Seymour* v. *Osborne*, 11 Wall. 516; *Smith* v. *Goodyear*, 93 U. S. 486; *Lehnbenter* v. *Holthaus*, 105 U. S. 94.

The evidence also discloses the fact that, in making the investigation into the novelty and utility of Shaver's claim required by the laws and rules governing the patent-office, the examiners submitted the same to a rigid scrutiny and comparison with the previous patents, which fact tends to strengthen the *prima facie* presumption arising from the issuance of the letters to Shaver. Furthermore, it is not shown in the evidence that this combination had ever been used or proposed prior to the date of Shaver's application, and, as it appears to be useful, the fact that it had not been previously applied tends to show that it demanded more than the exercise of merely mechanical skill to invent the combination. The construction of wagons, buggies, etc., is so general an industry, and so many persons are daily engaged therein, that the fact that none of the persons so engaged had put in use the combination in question is a fact tending to show that it demanded the exercise of invention, and supports the conclusion reached in the patent-office. Under the circumstances, the evidence, instead of weakening, tends to strengthen the *prima facie* case in favor of complainant; and consequently it must be held that the defense of want of novelty is not made out.

It is also urged that the patent is void because the transverse spring, marked "K" on the plan, is not an efficient part of the combination, and that, as it does not co-operate in producing the desired result, including it in the combination, defeats the patent. The result aimed at in combining the four elements included in the combination is to render the wagon gear more elastic, and thereby reduce the strain upon the side springs, reach, and head-block. Certainly the presence of this spring under the hind end of the wagon-box tends to lessen the strain upon the side springs; for, if the side springs were fastened at the rear end thereof directly to the wagon-box, the pressure and strain caused thereby would be directly communicated to the side springs, whereas such pressure now acts first upon the transverse spring, and only secondarily upon the side springs. Again, the side springs, at the point of junction with the transverse spring, are so fastened that a swinging motion is provided for, which allows the rear end of the side springs to elongate under pressure, without binding or cramping these springs. The addition of the transverse spring, therefore, serves to aid in producing the general result aimed at, to-wit, the reduction of the strain on the side springs, reach, and head-block, and aids in rendering the wagon gear more elastic; and consequently the fact that it is included as one of the component parts of the combination does not affect the validity of the patent as issued.

The defendants also deny the allegation of infringement. The evidence shows that in the wagons constructed by the defendant company the combination covered by the patent to Shaver is used; that is to say, the wagon-box, transverse half-elliptic spring, the side springs, and an

equalizer passing under the wagon body, and connected with the forward ends of the side springs. It is, however, claimed on part of defendants that there are such differences in the manner of connecting the equalizer to the side spring and wagon-box, and in the resulting operation of the equalizer, that defendants' wagons do not in fact infringe upon the combination included in the patent to complainant.

The main difference in the mode of connecting the equalizer to the ends of the side springs, as found in the models and wagons exhibited at the trial, consists in this: that in the Shaver wagon the ears or projections to which the ends of the side springs are fastened revolve or swing below the axis of the equalizer, whereas in the Skinner wagon the equalizer is not brought as close to the wagon body, and the ears swing above the axis of the equalizer. The object or purpose of the swinging motion to the ears connected with the forward end of the side springs is to allow play for the elongation or shortening of the side springs, and the communication of the motion of one spring to the other; and in accomplishing this no substantial difference is perceived in the two modes of attachment. Whether the ear or arm projecting at right angles from the equalizer is placed above or below the axis of the equalizer, the principle on which it acts is the same, and mere variations in form, which do not call into play any new principle, or effect any new result, will not be sufficient to evade the charge of infringement.

Thus, in *Machine Co.* v. *Murphy*, 97 U. S. 120, it is said.

"Nor is it safe to give much heed to the fact that the corresponding device in two machines organized to accomplish the same result is different in shape or form the one from the other, as it is necessary in every such investigation to look at the mode of operation, or the way the device works, and at the result as well as the means by which the result is obtained."

In the case just cited, the subject of the patent held by the complainant therein was a machine for making paper bags, in which the cutter moved vertically in cutting the paper into shape, whereas in the defendant's machine the cutting-knife was stationary, and the paper was cut by a striker driving the paper upon the edge of the stationary knife. It was held that, although wide differences existed in the arrangement of the devices in the two machines, yet they performed the same function; and, that being true, the "authorities concur that the substantial equivalent of a thing, in the sense of the patent law, is the same thing as the thing itself; so that if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape."

Furthermore, even though it be true, as claimed by defendants, that the mode of attaching the equalizer to the side springs in the Skinner wagons works more effectively by reason of the ears or arms being shorter, and being placed above the axis of the equalizing rod, this would only serve to show that experience had proven this to be the better mode of joining the side springs to the equalizer, and complainant is not limited by his claim or patent to any special position or length of the ears upon the equalizing rod. At the utmost, it could only be claimed

that this mode of attaching the springs and equalizer was but an improvement upon the invention covered by the patent to Shaver, and, so long as the improvement included the combination patented to him, it would, to that extent, be an infringement. *Elizabeth City* v. *Pavement Co.*, 97 U. S. 126–138; Walk. Pat. § 376.

In the testimony of some of the witnesses for defendants it is claimed that, in wagons constructed upon the plan of the Shaver patent, the gear is free to move laterally by reason of the fact that there is no shoulder on the equalizing rod to prevent such motion, which is prevented in the Skinner wagons by the shoulder formed on the rod by the sleeve which is attached to the rod. The evidence in the cause, however, shows that this claim is based upon a mistake of fact. The drawings attached to the patent of complainant show a collar towards each end of the equalizing rod, which serves the same purpose as the shoulder on defendant's form of rod, and complainant testifies that, in all the wagons manufactured by him, this collar or a pin, serving the same purpose, is used, so that a lateral motion is guarded against in each style of wagon. A further advantage claimed to be derived from connecting the side springs with the equalizer in the mode used in the Skinner wagon, is that thereby a direct draught is obtained from the rear axle, through the medium of the springs, thereby lessening the strain upon the reach, and also aiding in keeping the hind axle in line with the head-block, so that the wagon will track properly. In the Skinner wagon there is a reach connecting the head-block and rear axle, and the wagon-box is fastened to the front springs, to the brackets through which the equalizing rod passes, and to the rear spring. If by the draught of which the witnesses speak is meant a draught from the forward movement of the wagon, it would seem clear that this draught would be very slight; for, if the forward movement communicated any motion to the ears projecting from the equalizer, the tendency would be to depress them, and thereby depress the ends of the side springs, and the lengthening thus caused in the side springs would tend to throw forward the ears on the equalizer, and, as these move readily, the resultant effect upon the hind axle would be very slight.

If the draught spoken of, however, is caused by the pressure upon the springs resulting from the wagon-box and load therein, the effect in the Skinner wagon of the lengthening of the side springs is to rotate the ears forward, and the force expended in so doing reacts upon the hind axle, and doubtless has some effect in causing the wagon to track properly. In the Shaver wagon, also, the effect of lengthening the side springs by pressure is to rotate the arms of the equalizer forward, and the force thus expended also reacts on the hind axle; and, while it is claimed that the effect thus obtained is greater in the Skinner than in the Shaver wagon, yet it is a like effect, resulting from a like cause, and the difference in degree, if any, does not show that the device employed is substantially different in principle. In the Shaver wagon the main dependence for keeping the rear axle in line with the head-block is upon the reach, with the braces attached, and the wagon body; but the effect of these is aided

by the patented combination, in so far as the latter lessens the strain upon the reach and wagon body. In the Skinner wagon the reach, being of bent wood, and without braces, works less efficiently in holding the rear axle in line, and greater dependence is placed upon the equalizer and side springs than in the Shaver wagon, but the mode of operation does not differ in principle from that in use in the Shaver wagon. The object and purpose of the combination patented by complainant is to relieve the strain upon the reach and head-block. Even if it be true that, in using this combination, the defendants have discovered a method of utilizing the same so that an advantage is obtained in aiding the wagon to track, this could not relieve the defendants from the charge of using the patented combination for the purpose named in the patent to complainant, to-wit, rendering the wagon gear elastic, and relieving the strain upon the body, reach, and head-block, and such use is an infringement.

Some reliance seems to be placed by defendants upon a patent issued to George F. Thompson and Andrew Wilson under date of June 17, 1884. In the specifications attached thereto it is expressly stated that the claimant therein makes no claim to the combination patented by Shaver, and the patent issued to Thompson & Wilson simply covers a combination of a bracket, with a step attached, with an equalizing rod. It does not confer any right to the use of the combination covered by the Shaver patent, and therefore cuts no figure in this case.

It appearing, therefore, that none of the objections urged against the validity of the Shaver patent are well taken, and that in the wagons manufactured by defendants the combination covered by that patent is used, it follows that complainant is entitled to a decree for an injunction, and to an accounting on the question of profits; and it is so ordered.