## JOHNS–MANVILLE CORPORATION v. NATIONAL TANK SEAL CO.*

### No. 360.

Circuit Court of Appeals, Tenth Circuit.
April 13, 1931.

*Rehearing denied June 1, 1931.

Odin Roberts, of Boston, Mass. (Mason, Williams & Lynch, of Tulsa, Okl., Roberts, Cushman & Woodberry, of Boston, Mass., Herbert D. Mason, of Tulsa, Okl., and Robert Cushman and William Gates, Jr., both of Boston, Mass., on the brief), for appellant.

Howard Lee Smith, of Tulsa, Okl., for appellee.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

PHILLIPS, Circuit Judge.

Johns-Manville Corporation brought this suit against the National Tank Seal Company for infringement of Claim 1 of United States patent No. 1,184,673, granted to Charles C. Fardon on May 23, 1916, for improvement in storage tanks.

Claim 1 of the patent reads as follows:

"1. In a storage tank, a receptacle and a roof therefor, a sheathing covering the roof, a fabric engaging the sheathing and extending from the roof to the sides of the receptacle for sealing the joint between the roof and receptacle, and a binding means for binding the fabric against the side of the receptacle."

The defendant installed two tank top coverings for the Prairie Oil & Gas Company at Caney, Kansas, which plaintiff alleged infringed the patent.

From a decree dismissing the bill, plaintiff has appealed.

In the specification of the patent, it is stated:

"The invention * * * relates to a method for converting ordinary roofs of storage tanks into leak-proof roofs, so that storage tanks now in common use may be made safe from danger, due to explosions and from waste due to evaporation of the contents of the receptacle."

At the time of the Fardon invention, oil tanks consisted of a cylindrical shell, a bottom, and a top or roof consisting of a flat cone shaped wooden plank deck with a sheathing of thin sheet metal thereon. When crude oil was stored in tanks so constructed, great waste resulted due to evaporation and escape of volatiles, such as benzine, gasoline and the like. The purpose of the Fardon invention, embraced in Claim 1, was to prevent evaporation and escape of such volatiles by sealing the seams in the top and the joint between the roof and the side or cylindrical shell of the tank.

The patent drawings are as follows:

*Fig. 1.*

*Fig. 2.*

*Fig. 3.*

In his specification, Fardon describes his invention as follows:

"It is the purpose of the inventor to rearrange the metal sheathing of the roofs now in common use by removing the fastenings at the joints thereof and applying a roofing cement 8 between the overlapping sections forming the joints so that when the sections of the roof are brought together and the cement is hardened or set between the sections of the roof sheathing, gas tight joints will be formed to accomplish the result stated. It has been found in practice that the most effective method for securing the metallic roofing to the board cover of the tank is by nails 9 extending into the said board cover at an angle of 45°, the relation of these parts being well shown in Fig. 1. The metal cover is then covered or coated with heavy paint, which coating covers the same and preferably projects about three inches on each side so as to preclude the entrance of moisture.

"A further means for confining the gas except where the vents are located is to cover the joint between the tank and the roof; this being accomplished by applying preferably a fabric known as ducking to the roof near its edge and to the tank at the top thereof, the said fabric being continuous from the roof to the tank so that the joint between

these two portions of the tank is effectually sealed. The fabric 10 shown in the drawing may be attached to the roof by cement or other known means and it is likewise secured to the outer wall or surface of the tank by cement or other known means. * * *

"I have furthermore provided a means for firmly pressing the fabric against the tank, the same consisting of a binding wire or rod 12 extending round the said tank, the ends of said binding wire being connected by a turn buckle 13 which engages eyes or loops 14 on the ends of the said binding member, the same being effective to bind the fabric as stated closely against the side of the tank and this fabric is preferably coated with material which will render it impervious to gas or water."

The elements of Claim 1 are, in a storage tank, (a) a receptacle, and (b) a roof therefor, (c) a sheathing covering the roof, (d) a fabric engaging the sheathing and extending from the roof to the side of the receptacle for sealing the joint between the roof and the receptacle, and (e) a binding means for binding the fabric against the side of the receptacle.

The following is a correct illustration of the alleged infringing device.

The primary question presented is whether such flexible sheet metal and such row of screw bolts are the mechanical equivalents respectively of the fabric and the binding means, which are elements of Claim 1.

Counsel for the defendant contends that the Fardon patent makes no allowance for expansion and contraction of the metallic cylindrical shell, due to temperature changes, and that a device built on it will not function successfully because such expansion and contraction will loosen the fabric and destroy the seal. He contends that, on the contrary, the sheet metal sealing strip, used in the alleged infringing device to cover the joint between the top and the side of the tank, is flexible and will yield to expansion and contraction without breaking the seal. This contention is not predicated upon the introduction of any new element in the alleged infringing device but upon a structural difference between the patent drawings and the alleged infringing device. In the patent drawings, the fabric is shown to be drawn down tightly over the joint so as to produce a rigid, non-flexible eaves joint seal. While in the alleged infringing device, the sheet metal is permitted to bulge outwardly instead of being drawn down tightly over such joint,

In the patented device, a cloth fabric, coated with some material to render it impervious to gas, is used to seal the joint between the top and the side or cylindrical shell. In the alleged infringing device, a flexible sheet metal is used to perform this function. In the patented device, a binding wire is used to bind and hold the fabric against the cylindrical shell; while in the alleged infringing device a row of closely spaced screw bolts is used to bind the sheet metal sealing strip to the top of the angle iron, an extension of the cylindrical shell.

thereby creating a flexible instead of a rigid eaves joint seal. The latter construction is used in plaintiff's commercial device.

There is nothing in Claim 1 or in the specification which expressly or impliedly limits such claim to a rigid construction. In his specification, Fardon suggests, as the fabric, ducking which has been treated so as to make it impervious to gas. The claim states that the fabric shall engage the sheathing and extend from the roof to the side of the receptacle, and shall be attached to the side of the receptacle by a binding means. The element

which Fardon suggests permits of a flexible rather than rigid seal between the roof and side. Neither the specification nor the claim states that such fabric shall be drawn tightly over the roof and side so as to form a rigid eaves joint seal. Any mechanic would know that a metallic oil tank will contract and expand with temperature changes, and he would not attach a flexible sealing fabric so tightly that expansion would loosen the attachment of the edges thereof to the roof and side, when it is inherently flexible and permits of an attachment which will result in a flexible eaves joint seal.

A patentee is not restricted to the precise form of construction shown in the patent drawings, especially where that particular form is not essential to or embodied in the principle of the invention claimed. National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co. (C. C. A. 8) 106 F. 693, 715.

A device reads on the patent, provided it adheres to and embodies all of the essential principles disclosed by the patent, notwithstanding the drawings are departed from to the extent of simple changes which an ordinary mechanic would see and make in building a device on the patent. Manhattan Book Casing Machine Co. v. Fuller Co. (C. C. A. 2) 204 F. 286.

The mere fact that, in order to make the device operative and commercially successful, it is necessary to make a slight departure from the drawings, such as attaching the ends of the fabric so it will bulge outwardly and permit contraction and expansion without breaking the seal, does not, in our opinion, require a holding that the patent is inoperative. Neither do we think that one who follows the principle of the patent may escape infringement by making such an obvious structural change.

In National Hollow B.-B. Co. v. Interchangeable B.-B. Co. (C. C. A.) supra, 106 F. 693, at page 710, the court said:

"One who invents and secures a patent for a machine or combination which first performs a useful function is thereby protected against all machines and combinations which perform the same function by equivalent mechanical devices; but one who merely makes and secures a patent for a slight improvement on an old device or combination, which performs the same function before as after the improvement, is protected against those only who use the very device or improvement he describes or mere colorable evasions thereof. In other words, the term 'mechanical equivalent,' when applied to the interpretation of a pioneer patent, has a broad and generous signification, while its meaning is very narrow and limited when it conditions the construction of a patent for a slight and almost immaterial improvement. Adams Electric R. Co. v. Lindell R. Co., 77 F. 432, 440, 23 C. C. A. 223, 231, 40 U. S. App. 482, 498; Stirrat v. Manufacturing Co., 61 F. 980, 981, 10 C. C. A. 216, 217, 27 U. S. App. 13, 42; McCormick v. Talcott, 20 How. 402, 405, 15 L. Ed. 930; Railway Co. v. Sayles, 97 U. S. 554, 556, 24 L. Ed. 1053; Brill v. Car Co., 90 F. 666, 33 C. C. A. 213, 62 U. S. App. 276. But the great majority of patents falls between these two extremes. They are neither for pioneer inventions nor for improvements so slight as to be almost immaterial. While they do not evidence the first or the last step in the progress of the art to which they relate, they often mark signal advances and protect useful improvements. The doctrine of mechanical equivalents conditions the construction of all these patents, and in determining questions concerning them the breadth of the signification of the term is proportioned in each case to the character of the advance or invention evidenced by the patent under consideration, and is so interpreted by the courts as to protect the inventor against piracy and the public against unauthorized monopoly."

While plaintiff's patent is for an improvement and is not a pioneer patent, it is primary in the sense that Fardon invented the first device to seal oil storage tanks in order to prevent loss of volatiles through evaporation. It was a marked improvement in the art and is entitled to a substantial range of equivalents.

There are two well recognized tests of equivalency: (1) "Identity of function"; and (2) "substantial identity of way of performing that function." Walker on Patents (6th Ed.) § 417; Hyman v. F. W. Woolworth Co. (C. C. A. 8) 28 F.(2d) 833; Allen v. Wingerter (C. C. A. 3) 17 F.(2d) 745, 746; Superior Skylight Co. v. August Kuhnla, Inc. (C. C. A. 2) 273 F. 482, 485; Magic City Kennel Club v. Smith (C. C. A. 10) 38 F.(2d) 170, 172; Bundy Mfg. Co. v. Detroit Time-Register Co. (C. C. A. 6) 94 F. 524, 539; In re Husted, 39 F.(2d) 713, 715, 17 C. C. P. A. 1002.

The Standard Dictionary defines "fabric," as follows: "Something that has been fabricated, constructed, or put together." Webster's Dictionary defines "fabric," as fol-

146

lows: "The structure of anything; anything manufactured." In the broad sense of the term, a flexible sheet metal is undoubtedly a fabric.

Patents should be liberally construed, with a view of protecting the invention which the patentee intended to secure. Tompkins-Hawley-Fuller Co. v. Holden (C. C. A. 2) 273 F. 424, 430; Permutit Co. v. Wadham (C. C. A. 6) 13 F.(2d) 454, 455; United States Industrial Chemical Co. v. Theroz Co. (C. C. A. 4) 25 F.(2d) 387, 392; Winans v. Denmead, 15 How. 330, 341, 14 L. Ed. 717. "That interpretation which sustains and vitalizes the grant should be preferred to that which strikes down and paralyzes it." National Hollow B.-B. Co. v. Interchangeable B.-B. Co., supra, 106 F. 693, page 715.

We conclude that the word "fabric" should be construed in its broad sense and that it includes material such as sheet metal.

The flexible sheet metal extends from the top to the side of the receptacle and covers the eaves joint between the top and side. It is sealed to the top by cement, and to the side of the receptacle by cement and a row of spaced screw bolts. Therefore it performs the same function in substantially the same way as the fabric in Claim 1 of the patent in suit. A row of closely spaced bolts and cement are employed to seal and hold such sheet metal to the side or cylindrical shell. They are clearly a binding means within the meaning of that term as used in Claim 1 of the patent. The specification and drawings call for a binding wire and cement as such binding means. The row of spaced bolts and cement perform the same function in substantially the same way as such binding wire and cement.

It may be that the metallic sheet employed in the alleged infringing device is more durable, more flexible and better suited to the function for which it is employed than the material suggested in the patent specification. However, infringement is not thereby avoided. One may not avoid infringement by making a device which differs in form, or is more or less efficient than the patented device, where he appropriates the principles and mode of operation of the patented device and obtains its result by the same or equivalent mechanical means. Lourie Implement Co. v. Lenhart (C. C. A. 8) 130 F. 122, 129; Smith Cannery Machines Co. v. Seattle-Astoria Iron Works (C. C. A. 9) 261 F. 85, 88; Angelus Sanitary Can Mach. Co. v. Wilson (C. C. A. 9) 7 F.(2d) 314, 318; Shaver v. Skinner Mfg. Co. (C. C. Iowa) 30 F. 68, 71, 72; 48 C. J. p. 304, § 503.

Furthermore, where one part or element of a device performs the same function as an element of the patented device, infringement will not be avoided merely because it also performs an additional function. Holmes Burglar Alarm Tel. Co. v. Domestic T. & T. Co. (C. C. N. J.) 42 F. 220, 226; De Laski & Thropp Circular Woven Tire Co. v. William R. Thropp & Sons Co. (D. C. N. J.) 218 F. 458, 461; Powell v. Leicester Mills Co. (C. C. A. 3) 108 F. 386, 391; Rockwood v. General Fire Extinguisher Co. (C. C. A. 2) 8 F.(2d) 682, 688; 48 C. J. p. 307, § 505.

In Union Paper Bag Machine Co. v. Murphy, 97 U. S. 120, at page 125, 24 L. Ed. 935, the court said:

"In determining the question of infringement, the court or jury, as the case may be, are not to judge about similarities or differences by the names of things, but are to look at the machines or their several devices or elements in the light of what they do, or what office or function they perform, and how they perform it, and to find that one thing is substantially the same as another, if it performs substantially the same function in substantially the same way to obtain the same result, always bearing in mind that devices in a patented machine are different in the sense of the patent law when they perform different functions or in a different way, or produce a substantially different result."

Defendant's device performs substantially the same functions in substantially the same way and obtains the same result as Claim 1 of the patent in suit. Therefore it infringes Claim 1.

The decree is reversed, and the cause remanded for further proceedings in accordance with this opinion.