**BURNS v. KINFOLKS, Inc.**
**No. 317.**

District Court, W. D. New York.
March 6, 1933.

Denison & Thompson, of Syracuse, N. Y. (E. A. Thompson, of Syracuse, N. Y., of counsel), for plaintiff.

Charles W. Parker and Max D. Farmer, both of Buffalo, N. Y., for defendant.

ADLER, District Judge.

█ This suit was brought by Joseph E. Burns against Kinfolks, Incorporated, for infringement of his process patent No. 1,435,-514, and his product patent No. 1,388,547. The process patent relates to a method of producing a serrated edge on a cutting tool; and the product patent relates to a knife, such as a bread knife, having an edge provided with a series of sets of serrations extending in different directions with respect to the length of the blade produced by the grinding method described in the process patent. The questions presented by the defendant are that both patents are invalid because anticipated by the prior art; as involving no invention over the prior art; on the ground of double patenting; and in the case of the process patent that it is invalid as being merely the obvious and known function of apparatus. The defendant denies infringement with the statement that it makes a different arrangement of serrations and operates exactly in accordance with the prior art.

The process or method patent contains two claims both of which are in suit which read as follows:

"1. The method of forming a serrated edge upon a cutting blade, comprising bringing one side of said cutting blade into contact with an abrasive wheel having upon its surface a plurality of circumferential substantially parallel uniform ridges spaced by narrow grooves, while the wheel is rotating and maintaining such contact to simultaneously form upon said blade a plurality of relatively fine uniformly spaced, accurately shaped, substantially V-shaped grooves, deepening toward the edge of the blade, and intersecting and breaking the continuity of the edge of said blade, and determining a plurality of substantially similar V-shaped teeth.

"2. The method of forming a serrated edge upon a cutting blade comprising shaping an integral grinding wheel with a plurality of circumferential substantially parallel uniform ridges spaced by narrow grooves, and bringing one side of said cutting blade into contact with said wheel, while the latter is rotating, to simultaneously form upon said blade a plurality of laterally extending relatively fine uniformly spaced accurately shaped substantially V-shaped grooves intersecting and breaking the continuity of the edge of said blade, and determining a plurality of substantially similar V-shaped teeth."

The product patent contains two claims both of which are in suit which read as follows:

"1. An edged tool provided with a plurality of series of obliquely disposed grooves forming a plurality of series of relatively fine accurately shaped ground teeth, the grooves of each series being inclined with respect to the edge of said tool in a direction offset to the direction of inclination of the adjacent series of ground grooves.

"2. An edge tool provided with a plurality of series of obliquely disposed grooves, forming a plurality of series of relatively fine accurately shaped ground teeth, the grooves of each series being inclined with respect to the edge of said tool, in a direction offset to the direction of inclination of the adjacent series of ground grooves, and keystone shaped, smooth edged parts separating adjacent series of ground grooves."

■ 1. The defense of double patenting which is that one and the same invention is the subject-matter of both Burns patents, is not sustained. A careful analysis of the claims in the two patents, taking into consideration their interpretation in the light of the disclosures of the drawings and specifications, brings me to the conclusion that the claims in the two patents are not coextensive. In such case there is no double patenting.

■ 2. The prior product patent of Burns is not a good reference against his application on the process patent. The application for the process patent was filed prior to the application for the product patent, and both of them were filed during the year 1919. The product patent, application for which was made later, was issued first, in August, 1921. The process patent, application for which was filed first, was issued later in November, 1922. I have found that the claims in the two patents are not coextensive and that they set forth two separate inventions. The one is therefore not a good reference against the other. Miller v. Eagle Manufacturing Company, 151 U. S. 186, 14 S. Ct. 310, 38 L. Ed. 121; In re Thompson (Cust. & Pat. App.) 62 F.(2d) 90.

■ 3. A careful study of the proceedings in the Patent Office in the case of both of these patents has convinced me that there was no irregularity or failure of disclosure which would for these reasons invalidate the patents. It may be that the claims finally allowed were much limited in scope as compared with the claims first proposed and rejected by the Patent Office. Claims may be amended and limited if the details are disclosed in the drawings and specifications. The cancellation of broader claims on the prior art is not estoppel and is irrelevant. It is true that when an amendment departs from the claim of the original application, it must be verified by a supplemental oath. That means, as I understand it, that it is not permissible to depart materially from the original disclosure of the specifications and that, when amendments make any substantial departure from the original claims, a supplemental oath is required. My conclusion is that the amended claims come within the scope of the original application as disclosed by the specifications and the drawings and that a supplemental oath was not required.

■ 4. In studying the patents offered in evidence and showing the state of the prior art, I have in mind that a process is patentable irrespective of any particular form of machinery or mechanical device for practicing it. Naivette, Inc., v. Bishinger (C. C. A.) 61 F.(2d) 433. Applying this rule to all of the patents cited against the process

patent, I hold that they do not apply. On this point I will speak particularly of the Brooks patent, a machine for serrating cutting edges, which is now the property of the defendant. It appears from the evidence that by an arrangement of the emery wheels on the shaft of the machine it was possible to produce a serrated edge like the one described in the Burns process patent. This fact does not make it a reference against the Burns process patent because the Burns patent does not depend for its invention or validity on any particular type of machine or wheel upon which the blade is to be ground. Any kind of machine having a grinding wheel of such character to permit the grinding of serrations as described in the Burns process patent in the manner described in that patent could be used under the specifications and the claims. Other patents on machines and devices for grinding set forth in the book of patents are not references against the Burns process patent for the reasons above stated.

█ The references cited against the product patent are various. They are for the production of serrated edges for various purposes; some of them producing a saw edge, others a fluted edge, and others having certain other forms of serrations. None of them, however, disclose serrations of the type, character, and location as set forth in the Burns product patent, nor do they specify how the serrations are produced. This is true of the British patent cited, which patent in its drawings shows serrations at the cutting edge of the knife somewhat similar in character to those described in the product patent in suit. The patent does not, however, state how the serrations are produced but construing its disclosure strictly, as is the rule with respect to foreign patents, it will not be held to be a reference against the Burns patents.

5. Among the examples of prior use introduced in the testimony, all of those, such as serrations ground in the handle of razor blades, which have to do with serrations at any other point than the cutting edge of the blade, are immaterial. This applies to the fish-scaling knives and also to scoring knives which have a filing action. My conclusion is that prior use has not been shown in view of the limited scope of the patents. That I will now discuss.

6. Plaintiff's invention, if invention there is, in his process patent consists in the method of grinding fine, uniformly spaced, V-shaped grooves on the cutting edge of a blade and deepening toward the edge; the surface of the abrasive wheel to have on its circumference parallel ridges spaced by narrow grooves. This patent by its claims and its disclosures is strictly limited to the production on a cutting blade of uniformly spaced grooves by the process of grinding them on a suitably arranged wheel. The prior art and prior use show machines and gimp wheels upon which serrations can be ground, and have been ground. The invention disclosed by this patent is that improvement in the art which though slight and limited might be important. It is the grinding of serrations, even and of a certain character, in the blade of a knife, with certainty and regularity, to form an article of commerce in every day use and which by that process could be produced easily and practically in large quantities.

The product patent is an article that can be produced by the process described in the process patent. The scope of both patents is limited. I am persuaded that both patents show invention and are valid. The limited range of the patents is the production of a cutting blade having serrations on the cutting edge, the serrations being of a certain character and a certain arrangement and produced by grinding them in the blade on a rotating grinding wheel.

At this point I will state briefly my reason for finding invention in these patents. Grinding wheels have of course long been known and used. Serrations of different kinds on cutting tools have long been known. These serrations have been produced in different ways. In some cases by filing, in others by grinding. At no time before the issue of these patents do I find a record of the production of a cutting blade with the serrations on it of the character described in the patents and produced in the manner described in the process patent. The result was the production of an article of commerce practical and useful, uniform in character, and commercially successful. While commercial success is not necessarily a factor in determining invention, yet in this case it may be given some weight. Under the two patents the plaintiff put an article upon the market which had not been produced before, and which was commercially successful on its merits. He is entitled to the protection his patents afford him.

█ Plaintiff's patents are infringed by such of defendant's knives as have on their cutting edges serrations substantially as described in plaintiff's patents, such serrations being produced in series on a grinding wheel substantially as described in plaintiff's proc-

ess patent. The inclination of the serrations on defendant's knives need not be exactly the same as those shown in plaintiff's patent in order to infringe. A thing is the same which performs the same function and performs that function in substantially the same way or manner. Walker on Patents, § 354. A patentee is not restricted to the precise form of construction shown in the patent drawings, especially where that particular form is not essential to or embodied in the principle of the invention claimed. A device is covered by the patent, provided it adheres to and embodies all of the essential principles disclosed by the patent, notwithstanding the drawings are departed from to the extent of simple changes. Johns-Manville Corporation v. National Tank Seal Company (C. C. A.) 49 F.(2d) 142, citing National Hollow Brake-Beam Company v. Interchangeable Brake-Beam Company (C. C. A.) 106 F. 693, 715, and Manhattan Book Casing Machine Company v. E. C. Fuller Company (C. C. A.) 204 F. 286.

A decree in accordance with this opinion may be submitted.